JEW

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2019 KA 1612

STATE OF LOUISIANA

VERSUS

TERANCE ROSHELL DAWSON

JUDGMENT RENDERED: **NOV 1 7 2020**

* * * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge • State of Louisiana
Docket Number 04-16-0206 • Section I

The Honorable Fred T. Crifasi, Judge Presiding

* * * * * * *

Hillar C. Moore, III
*District Attorney*

ATTORNEY FOR APPELLEE
State of Louisiana

Stacy L. Wright
*Assistant District Attorney*
Baton Rouge, Louisiana

Jane L. Beebe
New Orleans, Louisiana

ATTORNEY FOR APPELLANT
DEFENDANT—Terance Roshell
Dawson

* * * * * * *

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

WRC by JEW

Chutz, J. concurs without reasons

**WELCH, J.**

The State of Louisiana charged the defendant, Terance Roshell Dawson, by bill of indictment with two counts of aggravated rape[1] (counts one and four), violations of La. R.S. 14:42; oral sexual battery (count two), a violation of La. R.S. 14:43.3; sexual battery (count three), a violation of La. R.S. 14:43.1; and indecent behavior with a juvenile (count five) a violation of La. R.S. 14:81. Defendant pled not guilty. After a trial by jury, the jury found the defendant guilty as charged on all counts by unanimous verdicts. For counts one and two, the trial court imposed concurrent terms of life and twenty-five years imprisonment at hard labor respectively; for counts three and four, the court imposed concurrent terms of twenty-five years and life imprisonment at hard labor respectively; and for count five, the court imposed a term of fifteen years imprisonment at hard labor. The trial court ordered the sentences for counts three and four to run consecutively to counts one and two. The trial court ordered the sentence for count five to be served consecutively to the sentences on the other four counts. The trial court ordered all sentences to be served without the benefit of probation, parole, or suspension of sentence. Defendant now appeals. For the following reasons, we affirm the defendant's convictions and sentences.

## STATEMENT OF FACTS

From about the age of five, A.J.[2] lived with her mother, brother, and defendant in Baton Rouge, Louisiana. A.J. thought of defendant as a step-father or "father figure." She also thought of defendant's daughter, A.A., as a little sister. When A.J. was about six or seven years old, defendant began to expose himself to her and show her pornographic videos. Defendant would also undress A.J. and put his mouth on her genitals, sometimes while using chocolate syrup. On other

---

[1] Pursuant to the amendment of La. R.S. 14:42 by 2015 La. Acts No. 256, § 1 (eff. Aug. 1, 2015), aggravated rape is now referred to as first degree rape. See La. R.S. 14:42(E).

[2] In accordance with La. R.S. 46:1844(W), the victims' initials will be used.

2

occasions, he would make A.J. perform oral sex on him, again while using chocolate syrup.

Soon thereafter, defendant began inserting his penis into A.J.'s vagina. The first time was in her bedroom, and though she tried to fight him, he was larger and "had so much control[.]" A.J. testified that defendant ejaculated after that first experience, and indicated he ejaculated during all of their encounters. She also explained that defendant would give her whatever she wanted, like ice cream, chicken, or money, in exchange for sexual contact. A.J. said the abuse occurred repeatedly, and would happen in her bedroom, her mother's bedroom, empty houses, his truck, or his car. Defendant would abuse her while her mother was out for dialysis appointments, three times a week. A.J. testified that the abuse continued until she was about thirteen years old. She described to the jury the appearance of a birthmark on defendant's penis and inner thigh, and that sometimes defendant would use baby oil to aid in penetrating her. A.A. is defendant's daughter. Around the age of seven or eight, she began spending some weekends with defendant at his apartment, where A.J. and her mother also lived.[3] When A.A. was eight years old, defendant began touching her "private areas" and would make her touch his. Later, defendant would insert his fingers into A.A.'s vagina. Eventually, defendant's touching turned into penetrative sexual intercourse. The first time occurred in the bedroom defendant shared with A.J.'s mother, when no one else was at home. He called her into his room and on the TV was playing a pornographic video. Defendant then removed his clothes and told her to remove her clothes. After the intercourse stopped, defendant made A.A. take a bath while he washed the blood-stained sheets. He told A.A. that "it was a daddy-daughter secret."

A.A. testified that defendant would also put his mouth on her genitals, and

---

[3] Although A.A. testified at trial that the defendant's apartment was located in Baker, Louisiana, the apartment was actually located within the Scotland Square Apartments in Baton Rouge.

make her put her mouth on his. Following the incidents of abuse, defendant would take A.A. to get ice cream or go shopping. The abuse continued in defendant's car and truck, the home of defendant's mother, and later at the home of defendant's next girlfriend, and a motel. A.A. explained defendant would wear condoms, and sometimes used baby oil. Defendant explained to A.A. that the abuse was his way of showing his love for her. The abuse stopped by the time A.A. was ten years old. A.A. described defendant as having a birthmark on the inside of his thigh.

L.S. lived with her mother and brother in a Baton Rouge apartment complex when she was nine years old. She knew defendant as her mother's friend. One evening in July 2011, defendant was present at the apartment with L.S. and her brother while their mother went out for the night. L.S. went with defendant to a convenience store to purchase some candy and chips. On the way home, defendant asked L.S. what she was "going to do ... to keep them chips." He then asked L.S. to perform oral sex on him. L.S. got out of the car and ran home, where she told her brother what happened. A neighbor called her mother, who came home. L.S. did not see defendant at her apartment again.

## ASSIGNMENT OF ERROR #1: MOTION TO QUASH[4]

In his first assignment of error, defendant contends the trial court erred when it denied his pretrial motion to quash the indictment where the State flaunted its power in refiling an indictment in order to evade time limitations and prejudice defendant. Defendant asserts he was prejudiced when he was subjected to additional charges and more victims against which he had to mount a defense. Defendant argues the effect of the refiling of charges was to permit the State to institute trial over five years after his original indictment. Defendant does not expressly claim a speedy trial violation, only that the State's "gamesmanship" was calculated to prejudice him with the new indictment and dismissal of the initial

---

[4] The Honorable Anthony J. Marabella, Jr., presided over the hearing and ruled on the motion to quash that is the subject of defendant's first assignment of error.

4

prosecution. Defendant goes on to argue that "the specific prejudice in this case was [defendant] now had to defend himself against two other alleged victims and different claims of sexual abuse."

The State argues it dismissed and reinstituted charges "with the most noble of intentions of seeking justice for these very young victims[.]" The State notes defendant was unable to show specific prejudice below resulting from a lack of witnesses or loss of evidence. The State asserts defendant is claiming for the first time on appeal that he was prejudiced by having to defend against additional claims by additional victims.

According to the trial court's written ruling on defendant's motion to quash, defendant was charged by bill of information on December 9, 2013 with one count of sexual battery and one count of oral sexual battery upon victim A.J. On August 13, 2015, the State amended defendant's original bill of information to charge him with two counts of sexual battery and three counts of oral sexual battery, all involving A.J. An August 24, 2015 trial date was reset on defendant's motion. Following re-arraignment on the amended charges, defendant's trial was set for April 4, 2016.

On April 4, 2016, the State moved for a continuance due to a prosecutor being sick. The prosecutor presented the court with a doctor's note. Defendant objected to the continuance, claiming it was a delay tactic in order to keep defendant in custody while the State continued with pursuing another grand jury indictment. The State did not know when it would present evidence for additional charges to the grand jury, but acknowledged it was forthcoming because defendant had a new arrest. The trial court granted the State's continuance and set trial for April 18, 2016; however, it did so over the State's objection that its expert witnesses would not be available on April 18th. On April 7, 2016, the State obtained the instant five-count indictment against defendant for crimes alleged to

have been committed against A.J., A.A., and L.S.

On April 18, 2016, the State dismissed the amended bill of information. In May 2016, defendant filed a motion to quash the first two counts of the new indictment that were related to A.J. Following a hearing, the trial court issued a written ruling denying the motion to quash on March 17, 2017. While it found the State had "flaunted" its prosecutorial power, it specifically held defendant had not established "any significant disadvantage or specific prejudice" and, therefore, was not entitled to relief. Defendant challenged the ruling in this court, but his writ application was denied. **State v. Dawson**, 2017-0527 (La. App. 1st Cir. 7/7/17), 2017 WL 2889291 (unpublished), writ not considered, 2017-1382 (La. 11/6/17), 229 So. 3d 474.

As an initial matter, the district attorney's authority over criminal prosecutions in his or her district is well established. See La. Const. art. V, § 26(B); La. C.Cr.P. art. 61. The district attorney has complete charge and control of every criminal prosecution instituted or pending in the district and determines whom, when, and how a defendant shall be prosecuted. La. C.Cr.P. art. 61. The district attorney has the power and discretion to dismiss an indictment or a count in an indictment, without leave of court. See La. C.Cr.P. art. 691. The dismissal of a prosecution rests entirely within the discretion of the prosecuting attorney. **State v. Papizan**, 2017-0028 (La. App. 1st Cir. 11/2/17), 256 So. 3d 1091, 1095, writ denied, 2017-2028 (La. 10/29/18), 255 So. 3d 572.

Because the complementary role of trial courts and appellate courts demands that deference be given to a trial court's discretionary decisions, an appellate court is allowed to reverse a trial court judgment on a motion to quash only if that finding represents an abuse of the trial court's discretion. **State v. Love**, 2000-3347 (La. 5/23/03), 847 So. 2d 1198, 1206. However, a trial court's legal findings are subject to a *de novo* standard of review. See **State v. Smith**, 99-0606 (La.

7/6/00), 766 So. 2d 501, 504. Barring extraordinary circumstances, courts should be reluctant to rule that a defendant has been denied a speedy trial. **State v. Moore**, 2008-1323 (La. App. 1st Cir. 12/23/08), 2008 WL 5377809 (unpublished), at *3.

To show a violation of a defendant's due process rights, it is not sufficient to show that the State dismissed a prosecution merely because it believed the dismissal was in the State's best interest. The record must establish the State dismissed the prosecution "for the purpose of" imposing a significant disadvantage on defendant, and, as a result, defendant's right to a fair trial was substantially prejudiced. **Papizan**, 256 So. 3d at 1098. Because of the severe consequences of a court dismissing a prosecution that is neither time-barred nor precluded by the right to a speedy trial under the Sixth Amendment, the Louisiana Supreme Court has articulated that a motion to quash should be granted only when the State exercises its authority in such a way that it not only disrupts the trial court proceedings or challenges the court's authority to manage its docket, but also "significantly disadvantages the defense at any forthcoming trial." **State v. King**, 2010-2638 (La. 5/6/11), 60 So. 3d 615, 619 (*per curiam*).

A court's resolution of motions to quash in cases where the district attorney enters a *nolle prosequi* and later reinstitutes charges should be decided on a case-by-case basis. See **Love**, 847 So. 2d at 1209. To meet the burden, a defendant must prove the State flaunted its authority "for reasons that show that [it] wants to favor the State at the expense of the defendant, such as putting the defendant at risk of losing witnesses[.]" **State v. Batiste**, 2005-1571 (La. 10/17/06), 939 So. 2d 1245, 1249. "Short of [a] statutory tolling," a showing of "specific prejudice" to the defense is essential. See **King**, 60 So. 3d at 619. Thus, where there is no showing the State is flaunting its authority at the expense of a defendant in entering a *nolle prosequi* and reinstituting charges, a defendant is not entitled to relief. See,

7

*e.g.*, **King**, 60 So. 3d at 618-19 (no prejudice found where State entered *nolle prosequi* when bank failed to comply with records subpoena, and there was no record support for "an inference that the [S]tate delayed matters to wear down the defendant[.]"); **Batiste**, 939 So. 2d at 1249-50 (legitimate *nolle prosequi* where victim unsure about continuing forward with case, and "record reveals no intentional delay on the State's part for the purpose of gaining a tactical advantage."); **Love**, 847 So. 2d at 1202 (proper use of *nolle prosequi* due to illness of State's witness). Cf. **State v. Reimonenq**, 2019-0367 (La. 10/22/19), 286 So. 3d 412, 417 (prejudice shown where *nolle prosequi* filed in order to gain continuance and evade trial court's evidentiary ruling without having to seek appellate review); **Papizan**, 256 So. 3d at 1099 (trial court's grant of motion to quash upheld where defendant claimed he would have to "incur additional attorney fees to defend the new prosecution," could not "afford to retain a jury consultant for a second trial[,]" and that his *voir dire* will not be as successful because "the prosecution 'knows what to expect.'").

Based on the record before us, we cannot say the trial court erred in finding the State had "flaunted" its authority by indicting defendant on new charges involving multiple victims in order to grant itself a continuance where the trial court would not. However, the trial court additionally found that defendant failed to allege any specific prejudice or disadvantage, as required by **King** for a motion to quash to be granted. The trial court noted that defendant argued he was generally prejudiced by the passage of time and the fading memories of potential witnesses.

We agree that, in the arguments made below, defendant failed to set forth what evidence might have been lost, or the specific witnesses whose memories would be rendered unreliable by the passage of time. See **State v. Johnson**, 2019-1391 (La. App. 1st Cir. 5/11/20), ___ So.3d ___, ___, 2020 WL 2393892, at *6

8

(trial court erred in granting motion to quash where "defendant offered no argument of prejudice beyond the allegation that a number of unnamed witnesses were no longer available.").

On appeal, defendant does provide something closer to specificity, arguing that it is harder to defend against the allegations of three victims as opposed to the original single victim. Though defendant makes the general allegation that his defense has been rendered more difficult by the number and nature of the new charges, such allegation is insufficient to establish "specific prejudice." See, e.g., **State v. Martin**, 2013-0628 (La. App. 4th Cir. 5/28/14), 141 So. 3d 933, 939-40, writ denied, 2014-1250 (La. 1/23/15), 159 So. 3d 1056 (inclusion of six additional offenses in reinstated prosecution following a *nolle prosequi* did not prejudice defendant). Cf. **State v. Hayes**, 2010-1538 (La. App. 4th Cir. 9/1/11), 75 So. 3d 8, 16, writ denied, 2011-2144 (La. 3/2/12), 83 So. 3d 1043 (observing that when a trial judge finds the only prejudice to result from the State's tactics is undue continued pretrial incarceration, the judge ought to first consider a less drastic remedy than dismissal, such as reducing the amount of bail).

From the record before us, it appears that the additional charges brought against defendant with the new indictment were a product of new information and a continuing investigation, and were not intended to deny defendant due process. Prosecuting alleged crimes obviously disadvantages anyone charged with them; however, defendant fails to articulate specific prejudice in his ability to present a defense to the additional charges. In sum, there is no indication that the State sought a tactical advantage over defendant, nor is there an indication that the State delayed matters in order to prejudice defendant. This claim is without merit.

## ASSIGNMENT OF ERROR # 2: IMPROPER JOINDER

In his second assignment of error, defendant argues he was prejudiced when the trial court denied his motion to sever counts one and two from counts three,

four, and five. Specifically, defendant contends that the State's inclusion of all three victims in one indictment prejudiced him, and "compiling counts with no similarity and allegedly encompassing an entire decade was inherently unfair and prejudicial[.]"

The State responds that the similarities between the offenses were "both striking and numerous," and, therefore, joinder was appropriate. The State claims there was no juror confusion with the counts and that they were able to "segregate the various charges and evidence." Finally, the State contends that even if the charges were improperly joined, such joinder was harmless.

Defendant filed a motion to sever the charges involving three victims, whose combined five charges against defendant were joined in a single indictment. According to the indictment, defendant committed aggravated rape and oral sexual battery against A.J. between January 1, 2004 and April 17, 2011, and April 18, 2011 and April 30, 2011, respectively. Additionally, defendant was alleged to have committed sexual battery and aggravated rape against A.A. between January 10, 2009 and June 6, 2013, and January 10, 2011 and June 6, 2013, respectively. Finally, defendant was alleged to have committed indecent behavior with a juvenile, L.S., on July 13, 2011. The trial court denied the motion on July 19, 2018.

Defendant in brief argues the counts should have been severed because they were separate incidents occurring on separate dates. According to defendant, the facts were separate and distinct, there was no common scheme, and the offenses against the three victims encompass three different modus operandi. find no reason to disturb the trial court's ruling.

Louisiana Code of Criminal Procedure article 493 states:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or

10

misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

Additionally, La. C.Cr.P. art. 493.2 provides:

Notwithstanding the provisions of Article 493, offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Cases so joined shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.

Finally, La. C.Cr.P. art. 495.1 establishes:

If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.

Here, all of the offenses with which defendant was charged require trial by a twelve-member jury, as they are all necessarily punishable by hard labor. La. R.S. 14:42; La. R.S. 14:43.1(C)(2); La. R.S. 14:43.3(C)(2); La. R.S. 14:81(H)(2); La. C.Cr.P. art. 782(A).

In determining whether joinder will be prejudicial, the court should consider whether: 1) the jury would be confused by the various counts; 2) the jury would be able to segregate the various charges and evidence; 3) the defendant would be confounded in presenting his various defenses; 4) the crimes charged would be used by the jury to infer a criminal disposition; and 5) especially considering the nature of the charges, the charging of several crimes would make the jury hostile. **State v. Vaughn,** 2018-0344 (La. App. 1st Cir. 9/24/18), 259 So. 3d 1048, 1059, rev'd in part on other grounds, 2018-01750 (La. 11/25/19), 283 So. 3d 494 (citing **State v. Deruise,** 98-0541 (La. 4/3/01), 802 So. 2d 1224, 1232, cert. denied, 534

11

U.S. 926, 122 S. Ct. 283, 151 L. Ed. 2d 208 (2001)). A severance need not be granted if the prejudice can effectively be avoided by other safeguards. In many instances, the trial judge can mitigate any prejudice resulting from joinder of offenses by providing clear instructions to the jury. The State can further curtail any prejudice with an orderly presentation of evidence. **State v. Malbrough,** 2013-2190 (La. App. 1ˢᵗ Cir. 4/25/14), 2014 WL 3843879, at *3 (unpublished).

A defendant in any case bears a heavy burden of proof when alleging prejudicial joinder of offenses as grounds for a motion to sever; factual, rather than conclusory, allegations are required. In ruling on such a motion, the trial court must weigh the possibility of prejudice to defendant against the important considerations of economical and expedient use of judicial resources. An appellate court will not reverse the trial court's ruling denying a motion for severance absent a clear showing of prejudice. **State v. Johnson,** 2011-1841 (La. App. 1ˢᵗ Cir. 5/14/12), 2012 WL 1744469, at *6 (unpublished), writ denied, 2012-1323 (La. 11/21/12), 102 So. 3d 53 (citing **State v. Morris,** 99-3075 (La. App. 1ˢᵗ Cir. 11/3/00), 770 So. 2d 908, 913-14, writ denied, 2000-3293 (La. 10/12/01), 799 So. 2d 496, cert. denied, 535 U.S. 934, 122 S. Ct. 1311, 152 L. Ed. 2d 220 (2002)).

The charges were properly joined. While the offenses were committed on separate dates and involved different victims, they were of a similar character. All three victims were young girls between the ages of six and thirteen at the time of the abuse. The State presented its case in a logical fashion and in such a manner as to keep the evidence pertaining to each count and each victim separate and distinct. It appears the jury was clearly able to segregate the various counts as the trial court specifically charged the jury separately as to each offense and corresponding victim. It is improbable that the jury was confused.

Moreover, evidence of the joined offenses would have been admissible other crimes evidence under La. C.E. art. 412.2 in severed trials of the related offenses to

12

show defendant's lustful disposition toward young children. See **State v. Carruth**, 2017-0341 (La. App. 1st Cir. 11/1/17), 2017 WL 4974608, at *7 (unpublished); **State v. Friday**, 2010-2309 (La. App. 1st Cir. 6/17/11), 73 So. 3d 913, 929, writ denied, 2011-1456 (La. 4/20/12), 85 So. 3d 1258; **State v. Dickinson**, 370 So. 2d 557, 559-60 (La. 1979) (trial court's denial of a motion to sever upheld in case involving kidnapping-attempted rape of one victim and then, a year later, kidnapping-attempted rape of another victim); **State v. Mitchell**, 356 So. 2d 974, 978-80 (La.), cert. denied, 439 U.S. 926, 99 S. Ct. 310, 58 L. Ed. 2d 319 (1978) (trial court's denial of motion to sever upheld in case involving three rape victims over a five-month period); **State v. Roca**, 2003-1076 (La. App. 5th Cir. 1/13/04), 866 So. 2d 867, 872-74, writ denied, 2004-0583 (La. 7/2/04), 877 So. 2d 143. See also **Deruise**, 802 So. 2d at 1231-33 (fact that evidence of one charge would not be admissible under **State v. Prieur**, 277 So. 2d 126 (La. 1973), in a separate trial on the joined offense, does not per se prevent the joinder and single trial of both crimes if the joinder is otherwise permissible); **State v. Murphy**, 2016-0901 (La. App. 1st Cir. 10/28/16), 206 So. 3d 219, 227.

Here, evidence of the aggravated rape and sexual battery of A.J. would have been admissible as other crimes evidence at a trial for the aggravated rape and oral sexual battery of A.A. and the indecent behavior of L.S. **Carruth**, 2017 WL 4974608, at *7 (while committed on different dates and on different victims, incidents were of a similar character where both victims were female escorts who posted online ads, both were handcuffed by defendant almost immediately after meeting him, and driven by defendant to a secluded area); **State v. H.A., Sr.**, 2010-95 (La. App. 3rd Cir. 10/6/10), 47 So. 3d 34, 37, 41-43 (trial court's denial of motion to sever upheld where charges of aggravated incest and molestation of a juvenile occurred between eight and fifteen years apart and committed against different victims). As noted above, in all five offenses, the three victims were

young girls between the ages of six and thirteen years old. In all of the offenses defendant knew the victims well, defendant was regularly in their homes, defendant waited until he was alone with the victims, and defendant groomed the victims with offers of ice cream and/or food. In the aggravated rapes of A.J. and A.A., defendant first started with touching their genitals, progressed to oral sex, and finally penetrated them, sometimes with the aid of baby oil. He perpetrated the crimes in their homes and his vehicles, and showed both girls pornographic videos. Both A.J. and A.A. described defendant as having a birthmark on his inner thigh. Therefore, the evidence of the offenses committed against any of the victims could have been introduced at the trials of the offenses committed against the other victims. Though defendant claims the contrary in his brief on appeal, the similarities in the victims and the methods defendant used to groom and molest the victims are exceedingly clear. Accordingly, the trial court did not abuse its discretion in denying defendant's motion to sever. This assignment of error is without merit.

## ASSIGNMENT OF ERROR #3: LUSTFUL DISPOSITION EVIDENCE

In his final assignment of error, defendant claims the trial court erred when it permitted the State to introduce evidence of a 1991 juvenile conviction in Mississippi for sexual battery of a victim under the age of 14. Defendant argues the offense to which defendant pled guilty is not similar in "time, location, or modus [operandi,]" "was purely prejudicial," and was introduced to "portray [defendant] as a bad person[.]" Defendant concludes that the inclusion of this evidence was not harmless, as it unfairly bolstered the State's allegation that defendant is a chronic sexual predator.

The State responds that the introduction of the Mississippi prosecution was supported by La. C.E. art. 412.2(A), and that the trial court did not err in admitting it into evidence. It also observes defendant's arguments citing La. C.E. art. 404(B)

14

are not relevant to the claim made. Further, even assuming any error, the State argues the admission was ultimately harmless in light of the other evidence presented at trial.

Before trial, the State filed notice that it intended to introduce "lustful disposition" evidence in the form of a 1991 guilty plea where defendant pled guilty to sexual battery after having been charged with rape. The trial court denied defendant's objection to its admission. The indictment and guilty plea were admitted into evidence, over defendant's objection.

Generally, courts may not admit evidence of other crimes or bad acts to show defendant is a man of bad character who has acted in conformity with his bad character. La. C.E. art. 404(B)(1). However, the State may introduce evidence of other crimes if the State establishes an independent and relevant reason, *i.e.*, to show motive, opportunity, intent, or preparation, or when the evidence relates to conduct which constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1). Even when the other crimes evidence is offered for a purpose allowed under Article 404(B), the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defendant's defense. **State v. Taylor**, 2016-1124 (La. 12/1/16), 217 So. 3d 283, 292. Moreover, the State must provide defendant with written notice before trial that it intends to offer prior crimes evidence. **Id**. Additionally, the State must prove by a preponderance of the evidence that defendant committed the other acts. La. C.E. art. 1104; **Huddleston v. United States**, 485 U.S. 681, 690-91, 108 S. Ct. 1496, 1501-02, 99 L. Ed. 2d 771 (1988); **State v. Brue**, 2009-2281 (La. App. 1st Cir. 5/7/10), 2010 WL 1838383, at *6, n.4 (unpublished), writ denied, 2010-1317 (La. 1/7/11), 52 So. 3d 883.

Further, La. C.E. art. 412.2(A) provides:

When an accused is charged with a crime involving

15

sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

Louisiana Code of Evidence article 402 provides that "[a]ll relevant evidence is admissible[.]" Under La. C.E. art. 403, otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." Evidence is deemed relevant if such evidence has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401.

Prior crimes differing from those at issue in a prosecution are still probative to establish a defendant's "lustful disposition" toward children. See, e.g., **Friday**, 73 So. 3d at 927. It is not necessary, for purposes of Article 412.2 testimony, for defendant to have been charged, prosecuted, or convicted of the "other acts" described. **State v. Berry**, 51,213 (La. App. 2nd Cir. 5/17/17), 221 So. 3d 967, 986, writ denied, 2017-1146 (La. 12/17/18), 257 So. 3d 1260. Further, "in enacting Article 412.2, the Legislature did not see fit to impose a restriction requiring such evidence to meet a stringent similarity requirement for admissibility." **State v. Wright**, 2011-0141 (La. 12/6/11), 79 So. 3d 309, 317. See also **State v. Luper**, 2019-0489 (La. App. 1st Cir. 11/15/19), 2019 WL 6045367, at *6 (unpublished) (possession of soiled children's diapers properly admitted to make the inference of a sexualized view of young children). The burden on the State at the instant trial regarding the prior acts was to prove them by a preponderance of the evidence, not beyond a reasonable doubt as required to

obtain a conviction. Cf. **State v. Harris**, 2011-253 (La. App. 5th Cir. 12/28/11), 83 So. 3d 269, 278, writ denied, 2012-0401 (La. 8/22/12), 97 So. 3d 376. Finally, a trial court's ruling on the admissibility of the additional other crimes evidence will not be disturbed absent an abuse of discretion. **State v. Altenberger**, 2013-2518 (La. 4/11/14), 139 So. 3d 510, 515 (*per curiam*); **State v. Jackson**, 2018-0261 (La. App. 1st Cir. 11/2/18), 265 So. 3d 928, 939-40, writ denied, 2018-1969 (La. 4/22/19), 268 So. 3d 304. See also **Wright**, 79 So. 3d at 316.

Here, the then sixteen-year-old defendant pled guilty to the sexual battery of a juvenile female under the age of fourteen years old. Though more details are not provided by the record, it is clear that the age and gender of the victim in that case are squarely consistent with the ages and gender of the three victims of the offenses for which he was tried in the instant case. Moreover, even assuming *arguendo* that the trial court erred, the effect of that error was rendered harmless by the overwhelming evidence of guilt presented by the State. See **State v. Becnel**, 2016-1297 (La. App. 1st Cir. 4/20/17), 220 So. 3d 27, 34, writ denied, 2017-1023 (La. 3/9/18), 238 So. 3d 451 (observing that the erroneous admission of other crimes evidence is subject to a harmless-error analysis, which considers whether the jury's verdict was "surely unattributable to the error"). This claim is without merit.

## PATENT ERROR

This court has conducted an independent review of the entire record in this matter, including a review for error under La. C.Cr.P. art. 920(2). Our review has revealed the existence of a patent sentencing error in this case.

Defendant filed a motion for new trial, and the trial court denied it on the day of sentencing, just prior to the imposition of sentence. Louisiana Code of Criminal Procedure article 873 mandates, in pertinent part, that "[i]f a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at

17

least twenty-four hours after the motion is overruled, ... [unless] the defendant expressly waives a delay[.]" There is no indication in the record defendant waived the twenty-four hour delay for sentencing. Herein, the trial court erred by sentencing defendant immediately after ruling on the motion for new trial. While defense counsel did not contest moving on to sentencing immediately following the denials of his motion for new trial, in **State v. Kisack**, 2016-0797 (La. 10/18/17), 236 So. 3d 1201, 1205 (*per curiam*), cert. denied, ___ U.S. ___, 138 S. Ct. 1175, 200 L. Ed. 2d 322 (2018), the supreme court found the defense counsel's participation in the sentencing hearing was insufficient to constitute a waiver of the delay required by Article 873. As observed by the court, "[a]n implicit waiver . . . runs afoul of the plain language of Art. 873 that requires that the waiver be expressly made." **Id**.

Nevertheless, in **State v. Augustine**, 555 So. 2d 1331, 1333-34 (La. 1990), the Louisiana Supreme Court indicated that a failure to observe the twenty-four hour delay provided in Article 873 will be considered harmless error where defendant cannot show that he suffered prejudice from the violation, and sentencing is not challenged on appeal. See **State v. White**, 404 So. 2d 1202, 1204-05 (La. 1981). See also **State v. Carter**, 2014-0742 (La. App. 1ˢᵗ Cir. 3/25/15), 167 So. 3d 970, 979 (observing that "[a]s a general rule, when a defendant challenges a non-mandatory sentence, and the delay is not waived, the defendant's sentence must be vacated and the matter remanded for resentencing"). Defendant has raised no challenge to the sentences imposed on appeal.

As an initial matter, defendant was sentenced to mandatory minimum sentences in his convictions for aggravated rape, sexual battery, and oral sexual battery. In **State v. Seals**, 95-0305 (La. 11/25/96), 684 So. 2d 368, 380, cert. denied, 520 U.S. 1199, 117 S. Ct. 1558, 137 L. Ed. 2d 705 (1997), the Louisiana Supreme Court noted that the mandatory nature of the sentence distinguished the

case from **Augustine**, *supra*, and found that the reversal of the sentence for failure to wait twenty-four hours between the denial of the motion and imposition of sentence was not warranted in the absence of prejudice. See also **State v. Sam**, 99-0300 (La. App. 4th Cir. 4/19/00), 761 So. 2d 72, 77-78, writ denied, 2000-1890 (La. 9/14/01), 796 So. 2d 672. Accordingly, any error in the trial court's failure to observe the twenty-four hour delay is harmless beyond a reasonable doubt and does not require a remand for resentencing. See **Seals**, 684 So. 2d at 380 ("Delay or no delay, the sentence the judge was required to impose would have been the same. Thus, no prejudice could possibly have resulted from the failure of the court to comply with the delay.").

Defendant's fifteen-year sentence at hard labor for indecent behavior with a juvenile is in the middle of the permissible sentencing range. La. R.S. 14:81(H)(2). However, defendant does not raise his sentencing as an issue on appeal, and, therefore, does not show any prejudice by his procedurally improper sentencing. Accordingly, any error in the trial court's failure to observe the twenty-four hour delay is harmless beyond a reasonable doubt and does not require a remand for resentencing. **State v. McIntosh**, 2018-0768 (La. App. 1st Cir. 2/28/19), 275 So. 3d 1, 8, writ denied, 2019-00734 (La. 10/21/19), 280 So. 3d 1175.

## DECREE

Based on the foregoing, we affirm the defendant's convictions and sentences.

**CONVICTIONS AND SENTENCES AFFIRMED.**

19